Jerome Clyde Smith v. BP Exploration, 23-30619 Why don't you wait for things to calm down just a bit behind you. Good morning. May it please the court, my name is Matthew Kida and I represent plaintiff appellant Jerome Smith. This court is certainly familiar with appeals arising out of the Deep Water Horizon spill. Make no mistake about that, I'm not going to recite the facts, that's not necessary here. This case presents a unique procedural dispute that is not present in the scores of other cases that this court has handled and it has to do with the modification of scheduling orders when the parties are waiting on third party discovery and how umbrella discovery agreements that have been entered into in multi-district litigation in other proceedings, how they should be enforced with respect to the deadlines in a collateral matter. I respectfully submit that this situation that is presented by this appeal is not just important for the Deep Water Horizon cases, which some day will come to an end, but for not only all toxic tort cases, but for any large business dispute that relies heavily on third party discovery or involves multi-district litigation where a common set of facts is being litigated by numerous parties in numerous courts. And I think to sort of highlight the uniqueness of this case, it's important to sort of look at the timeline and the set of facts that Judge Vitter was considering at the time that she granted the summary judgment motion. Now, as you all know, under these below cases, as we call them, no discovery is possible until the case is assigned to a judge. So even though this case was filed in March of 22, it wasn't assigned to a judge until August 25th. So that was the first day that discovery could even conceivably begin for Mr. Smith. Shortly after the case was assigned, my clients filed a motion to recuse Judge Vitter. Two weeks afterwards, and while that motion was still pending, Judge Vitter entered a scheduling order that said all expert discovery had to be completed within four months. And at the time, not only had our parties just began entering into discovery in that particular case, they were — it's undisputed that they were waiting on third party discovery from three specific contractors that BP had worked with. And the case that we consistently recognize or acknowledge in this case is the Culliver case, which was pending in Pensacola. And there doesn't seem to be any dispute in the record that the parties were following an umbrella discovery plan in Culliver. And just a little bit of extra information on that. There's also no dispute when this — when these third party entities would produce discovery, BP wanted an opportunity to review it all and redact it for privilege before it was produced to the plaintiffs. So, undisputed here, five days before the eventual expert discovery deadline for the plaintiffs, this third party produced 750,000 pages of documents. That was the exponent third party. Another had produced about 7,500 pages only a week or so before. The third party, or third third party, we had attempted to depose a corporate representative and unfortunately five members of the company were killed in a plane crash the previous month and the discovery — the deposition had to be reset. But when the — so, the plaintiff moved for an extension of the expert discovery deadline. Now, concede from the outset, yes, it was — the motion was filed a day before the deadline. But I think you have to consider in this case that the applicability of the umbrella discovery agreement was always thought to be binding. Another court had said, you know, we're pushing this out, we're waiting on, you know, BP to finish. The substance of it doesn't matter. The fact is, is that there was an agreement that exists. So, in effect, you have to wait on the other party before you can do anything? That's essentially it, Your Honor. The third party is producing documents. BP has an agreement that they get to review them before they're even produced to the plaintiffs. So, you can't — you don't have any standing to file a motion to compel in Florida? Yes, Your Honor. Mr. Smith did not have standing to file a motion to compel in Florida. What had actually happened was motions to compel had been filed in Florida, and the parties were cooperating with what the judge in the Culliver case had ordered. So the understanding from the plaintiff's perspective here is, this is all coming in, we're eventually going to get it, and as soon as we do, you know, we'll designate our experts who can rely on the information. But what Judge Vitter did here was denied — sorry — denied the motion to extend the deadline. To be fair, she granted a 30-day extension, but granted it eight days before the deadline she inevitably gave, such that there was no conceivable way that the plaintiff could review nearly a million pages worth of documents and take necessary depositions and have their experts review all of it so that they could provide reports by the designated date. So that's the unique circumstance we have here. Now, the argument that the district court made, and that my friend on the other side uses to seek an affirmance, is none of the information that you were trying to get would have helped you anyway. And we respectfully disagree. And I think that's perhaps where this case can go off the rails, is if we start looking more at what the substance of the discovery would have produced, as opposed to the general principle of, can a district judge deny a motion for an extension of the deadlines that meets all of the common law requirements under Rules 56 or 16 or 6 or any one of them that has the good faith standard in it? Can that motion be denied based on what the judge thinks the information might produce? Counsel, you've gone pretty long into your argument without first talking about the distinction the district court and opposing counsel make, that this would only have been evidence about specific causation, and you were not blocked from providing an expert and some expert opinion on general causation. What did you need from what was going on in the other case, upwards of a million pages of documents, that would have gotten into the specifics of what your client and others were exposed to? You know what he has, rhinitis, and so you need an expert to testify on general causation that his condition could have been caused by, and then off you go. So why were you blocked from coming up with that expert? There's two parts to that answer, Judge, and I'll try and answer them so that it makes sense. With respect, there was no, no one was blocked from, like, procedurally, like, you could not have done so. I, to that end, I don't think the rules require, if a short motion for summary judgment is filed saying you have no evidence of causation, you know, and triggering the burden to come up with evidence that shows it. If you have a whole bunch of causation that's ready to go, and a little bit that's not, I don't think the rules require you to say, here's my entire case, and oh, please, can I have some more time for the last part? They came forward and followed Rule 56 and Rule 16 and said, I need a little bit more, here is why, here's all the reasons, here's what I expect to get. And there's no dispute that those bases were covered. So the question is, then, what about the information that we were waiting on from Exponent, CTEH, and from the other company that's out there, what, how could that have helped? And I think that's the second part of your question, Judge Southwood. The District Court, and I respectfully submit BP, are representing that general and specific causation are essentially two entirely different buckets, where one just says, show us how this particular chemical or substance or drug affects the general population, and what limit is that, and then show me over here that your plaintiff was exposed to that amount, and that's why it causes damages. And that is essentially true, but it's a Venn diagram. They overlap. The general causation is determined by looking at specific instances. You say, do these specific elevated chemicals of concern cause this medical endpoint? And you look at lots of these, and you give it to an epidemiologist, who then makes a conclusion about whether or not generally, at what point does it cause causation, or could it cause such effects, rhinitis in this case, in a human being, and then over here, did it actually happen? So when we say we're looking for information from experts about exposure data, or looking for information about the company that made the product that was being used to dissolve the water, or information from the other company that was collecting the data, or manufactured the product, we want to know what our guy was likely exposed to, so that the epidemiologist can make that link. So to say that, oh, no, that only went to specific causation that couldn't possibly address general, that simply misstates the science, and that misstates the law. Now, what I'm hearing is, and I'm not trying to go beyond what is in the record, is that there may be some uncertainty at this point what chemicals and other toxic substances he was exposed to. You know what he did. You know what his condition is. At least expert would be willing to say what his condition is. But you perhaps, perhaps attorney client privileged at this stage, but you are not in a position to say what he was exposed to. Well, that's what we're trying to find out, Your Honor. That's what I'm asking. So you're waiting for that information from this other case, even to know what he was exposed to. That is absolutely correct. But you are, I don't want to use a dirty word, but you are speculating that it was something in all of that, and it's quite reasonable speculation, caused his rhinitis. And I think you hit the nail right on the head, Judge. For an attorney to speculate, that's just fine. Experts can't speculate. That's not their job. Discovery, you know, the scope of discovery is not what do I think, what do I think I can find and explain to you why I think I can find it. The question for whether it fell within the scope of discovery is, is the request I'm making reasonable? And no one was suggesting, I mean, another court had ordered Exponent and those other companies to produce this information. So whether it was relevant has already been determined. We're just waiting to get it. So where I think the confusion comes, there's two cases, the Byrd case, Judge Southwick, I know you were on that one. There's another called McCabe, and a few others actually just more recently from this Court, where they talk about, I think the line cited in BP's brief is, this type of information generally goes to specific causation, you know, for most interpreters. But you have to look at the procedural posture of those cases. In the cases where this Court had made those statements, it was in cases where a Daubert challenge had been, you know, the plaintiff had complied with his expert disclosure requirement, a Daubert challenge had been filed, the Court struck the expert, and as the plaintiff was running out of time and trying to find a, file a motion for summary judgment, in Byrd they said, all right, well, before you do that, give us some extra time so we can depose a corporate representative. And in McClain, they said, give us some extra time because we have a novel theory of discovery that we'd like to pursue. And this Court said, no, okay, you're out of time. Your general causation expert was stricken, you're, you're out of time. In that context, this Court said, besides, the information you're looking for goes to specific, not general. We struck your general causation expert. But what BP and I think the District Court have done here is taken those statements, you know, which are in the head notes now, and applied it to here and said, well, look, all this outstanding discovery that's coming from exponent and Corexit, et cetera, that's just specific causation stuff, so anything they're asking for is irrelevant and they couldn't get there anyway, so we might as well just grant the summary judgment motion now. And I think that that is a premature decision. This is, the expert hasn't even produced his report yet. And there's no question, in the McCabe case, even though it works against my client, McClain, excuse me, where the ultimate result was that they could not have an extension and they couldn't supplement their discovery, this Court noted in that case that there are some circumstances in which you don't have to have a specific dose in order to show general causation. But the Court did say it has to be a thoroughly robust expert report. And it highlighted cases in which they, this Court found that reports were sufficiently robust, such that a specific general causation dose was not necessary, and then highlighted other cases where they said, well, in this case, the expert failed. We're not even there yet. We're asking for additional information for our experts to review. And I think, just turning to the policy angle of it while I have a minute left, the reason I ask this Court to consider this case beyond the context of BP oil spills or toxic torts is because third-party discovery is inherently different from a discovery dispute between the parties. If a district court orders someone to produce their corporate representative and they just refuse by all the deadlines, the district court has the discretion to say, well, fine, you can't rely on that guy then. You can't call him to testify. Any documents that he didn't produce under the ducis tecum are, you know, spoliated, whatever. There's remedies when it's the parties. But when you're dealing with a third party, who the only, you know, action the district court can take is the enforcement of a subpoena, it's completely unfair to the plaintiff to say, well, I'm sorry that the third party didn't produce the stuff, but your deadline ran. And that is not a unique thing to this case or business litigation or personal injury litigation. Information from third parties happens all the time. I see my time has expired. I can address on rebuttal or any other cases you have. Thank you, Counsel. Thank you, Your Honor. Thank you, Your Honor, and may it please the Court, George Hicks for the BP Appellees. Under Federal Rule of Civil Procedure 56D in this Court's cases, a plaintiff seeking an extension of time to oppose a summary judgment motion must show that that further discovery is essential to its opposition, meaning that it would create a genuine issue of material fact precluding summary judgment. The discovery that Plaintiff Jerome Smith sought here was not essential, and the district court did not abuse its substantial discretion in managing its docket when it denied Smith's request and granted summary judgment for BP. This Court has repeatedly held that a plaintiff in a toxic tort case must offer expert evidence satisfying certain minimal requirements for establishing general causation. It has done so recently in the Braggs case, the Barrington case, the Prest case, the Bird case. Those requirements include, among others, identifying the general population. The requested discovery here, which was sought in another case, the Culliver case in the Northern District of Florida, would not have satisfied that critical requirement among many other requirements. Instead, that discovery concerned third-party data plaintiff wanted to use to challenge the existing sampling data that he already had. Counsel, it seems to me, when I was hearing from opposing counsel, though I don't know if it's set out this way in the briefing, there's some uncertainty until he gets this Culliver discovery of exactly what caused his client's condition. Has that been part of this case, that until they get that information, certainly knew he worked for BP, knew what he did, knew he was exposed to a lot of things that can cause conditions and have been sued over, is it basically a reliance upon this Culliver discovery before he can even find a general causation expert? No, Your Honor. There has been a copious discovery before this. There has been an extraordinary amount of site-specific sampling by the federal government, by EPA, NIOSH. So anybody has condition that doesn't track with what the discovery's already, that's already been produced? That has already been produced. The discovery here has nothing to do with that. What it has to do with is an attempt by the plaintiffs to claim that the sampling that has already been done at that site, which has identified the chemicals that are part of the spill and incident that these workers were exposed to, was somehow faulty or incorrect. But none of that, so that, so just factually, I mean, Dr. Sahu's declaration, which provides the relevant facts here about what they claim to be needing, he says, I've reviewed the oil spill data from the federal government, from BP, and I think that there are failures associated with that, and only then can I create a more accurate picture. But all of that is getting into what Mr. Smith specifically was exposed to. And this Court has made very clear, and it could not have been more clear in the Bragg's case from just a couple months ago, general causation does not depend upon particular sampling taken from the incident in question. And if anything, if the, if we're looking at an abuse of discretion standard here, which is what applies, and the Court has said many times how highly deferential that is in the Byrd case, broad discretion that will not be disturbed absent unusual circumstances showing clear abuse. And Judge Vitter simply looked at this Court's cases that have said that this is all a matter of general causation, and I don't think that you can fault her for following this Court's case law. And if you're going to somehow create a new standard, I don't think this is the Court, the case to do it, where we're talking about an extension of time for summary judgment. And if you really want confirmation of that, look at what's happened in the Culliver case. The Culliver case is where this discovery was sought, and there were discovery disputes, and finally it was completely turned over. And what's happened in that case, tens of thousands of documents were produced by these third-party contractors. There was ample time to review it. There was additional time given there. Not one of those documents was used in the plaintiff's expert reports in opposing Daubert exclusion, in opposing summary judgment. You're talking about in the Florida case? Yes, the Culliver case. This specific exact discovery that is being sought here and claimed as the reason why there needed to be more time here, not one document was used in Culliver. And the magistrate judge excluded the Daubert, excluded the experts, recommended granting summary judgment, and not only because of the inability to identify a harmful level of toxin, but for many other reasons that didn't satisfy general causation that would also apply here. And so if you're trying to look at whether this discovery was essential or not, I mean, Culliver confirms that it was not. And particularly on an abusive discretion standard, I don't see how you could say that Judge Vitter clearly abused the discretion. But if you want more proof— Let's stop with the proof you've already talked about. You're saying that the facts in this record will show that plaintiff knew the chemicals and toxic substances at the locations where he worked. And there may be disputes about some of the methodology or otherwise that might apply to that. But in your view, the facts would support he didn't need any more information to know what he would need to know in order to find a general causation expert, because the evidence was there as to what was at the job sites that could have caused the rhinitis, and he just needed to find an expert that would, using expertise accurately and validly and honestly, say that's what the cause was. My understanding, yes, sir, Your Honor, is that they even had ways that they could sort of geo-track the response workers and know where they were in a particular area, what the chemicals were there. And in many of these other cases, these Deepwater Horizon cases, they've identified—they know the chemicals, benzene, toluene, PAHs. I mean, there's not a lot of mystery about what the chemicals are. The problem is, in every single one of these cases, the plaintiffs are not able to show what harmful level of those chemicals, pick a chemical, has been able to show that condition in the general population, among many other problems with general causation. Is this an unusual condition in one of these BP cases, rhinitis? I don't think it's unusual. I think it's been pled fairly often, and there have been many, many, many exclusions of experts and grantings of summary judgment over it. And that's what these district courts are looking to. I mean, they're looking to what this court has said, bragged, and Barrington, impressed, in Byrd, and they're looking to that to understand what is required for general causation, what falls in the general causation, what falls in the specific causation. And so when courts are looking at statements like, in Braggs, general causation does not depend upon particular sampling taken from the incident in question, exposure data collected bears on specific causation, that's what they're following. And at a bare minimum, I don't think you can say it's an abuse of discretion for a district court to look at that in trying to manage its docket. I mean, the district court knows these cases. It knows the facts. It knows the proceedings. It knows the situation of the other cases. And to be able to look at that and say, I don't think that the discovery you're asking for, based on the declaration you're giving me, is going to have any effect on the ultimate question of summary judgment, and that's been proven again and again. Did none of that discovery relate to the dose or the amount of exposure? He said he was asking to be able to complete. I believe that, I mean, are you saying that the data that's already been provided? Was he asking for time to get more discovery on the dose that the general workers out there were exposed to? I don't believe so. I'm looking at Dr. Sahu's declaration, which is the only basis we have for why they needed an extension. And it was really simply because they have a belief that BP and the contractors and the federal government are all getting together and presenting wrong data, incorrect data. And so it's not really about what particular dose. And again, I'm only going from the declaration. That's all the district court had, too. So I can speculate as much as the next person or try to come up with something, but I'm looking at the declaration, and that was what was in front of Judge Vitter. But if you want to look at when Mr. Smith asked for these extensions below, he cited 16 other cases where the extension had been granted. And he points to that in his briefing as a reason for why it was an abuse of discretion for Judge Vitter not to have granted the extension. Well, number one, this Court is very clear that abuse of discretion review, particularly when it comes to docket management, means that a district court can come to a different conclusion than other courts, or even what this Court would do. Even if this Court, this is what the Court said in Borden, would come to a different conclusion, that's not an abuse of discretion. But let's look at those 16 cases a little couple months down the road and see what happened. Of those 16 cases, 10 have been voluntarily dismissed by the plaintiffs, probably because this Court's case law is making it very clear that they can't satisfy causation. Two of them had subsequent 56-D motions denied, and summary judgment was granted for BP. Two of them excluded the plaintiffs' causation experts and granted summary judgment for BP. And two of them have expert deadlines approaching or pending. So of those 16 cases, almost all of them, again, it didn't matter. The discovery didn't matter. And it doesn't matter here. I mean, again, if you can look at Culver, they have the data that is needed. But again, there's many other general causation requirements that they still wouldn't satisfy, even beyond the harmful level of toxin. They need to show an association between the chemical, the chemicals, and the condition. They need to show, through the Bradford Hill factors, a causal connection. Dr. Sahu's declaration has nothing to do with it. He's not even a causation expert. And he's been excluded in other cases that have continued to go on. So there's a whole lot more missing here. And I want to use that to kind of segue into a point that I think was predominating in Mr. Smith's opening brief, which is this idea that as long as there's a tacit requirement imposed, that Rule 56D relief is warranted only if all the experts need additional time to complete their reports. I think that's sort of Mr. Smith's attempt to argue that if the discovery might be relevant to specific causation, then that justifies the extension no matter what happens with the general causation. I mean, that was his primary argument in his opening brief. But that simply doesn't work, and I think that that's why it was sort of abandoned in the reply brief, because, of course, you need to show both general causation and specific causation. And there are many elements of general causation that you need to establish, in addition to just the harmful level of toxin, which this Court has stated over and over. And the declaration here, looking at the other cases that have had this exact requirement and this exact discovery where nothing has come of it, I think just reinforced that Judge Bader certainly didn't err, but at the very least, again, didn't abuse her discretion. I mean, this is an area where district courts are afforded substantial discretion, and for good reason. They know the case. They know the facts. These are very fact-intensive situations. She knows what's going on in all the other cases, whether it's in the Eastern District of Louisiana, the Northern District of Florida. There are some cases in Mississippi. And I would submit that I think it would be very unwise for this Court to reverse and find an abuse of discretion, because I think that's sending a very strong signal to district courts that something as sort of ministerial and everyday as docket management is going to be carefully scrutinized over something that, I assure you, is not really going to matter in the end. So I think it would be actually quite imprudent to go in that direction, particularly when I didn't see a single case cited in either of Mr. Smith's briefs where this Court has actually reversed or vacated a denial of a 56D motion. It's extraordinarily rare. I think the Court was right in Byrd when it said that this is a determination that will not be disturbed absent unusual circumstances showing clear abuse. And I struggle mightily to see how Judge Vitter did that when she was simply following this Court's case law. If in another case this Court wants to talk a little bit more about how general and specific causation work together, overlap or don't overlap or something along those lines, sorry to say there's going to be more appeals coming and there might be an opportunity to do that. But this is not the case to do that. This is about an extension of a 56D, of a summary judgment deadline in a situation where, as has been shown by multiple other cases, the discovery just wouldn't have mattered. I want to touch on a couple other points that were raised in Mr. Smith's briefing. There's an argument that the exclusion, that the summary judgment was granted on grounds that were not raised or identified in BP's motion. I don't think that's correct based on the record. We argued at record 554. We argued a lack of legal causation, which encompasses general and specific causation. We mentioned that the two minimal facts, among other things, that he needs to show, that's at record 556. He then argued in opposition to general and specific causation. So he was well aware of it. That's at record 615 and 622. And then in our reply, we specifically mentioned general causation at record 757. And we referred back to our prior motions, the Rule 6 motions that he had made. So there was really no surprise that general causation was the issue, was the problem here, as it has been in virtually every other case that has come to this court. I think I've already talked about Mr. Smith had identified that there were extensions granted in other cases, but as a matter of law, that's insufficient. And as I've pointed out, in all of those other cases, that's just even more confirmation that this discovery didn't make a difference, showing that Judge Bitter didn't err, but certainly didn't abuse her discretion. And I think that I'm happy to answer any other questions you might have. Thank you, Counsel. I would ask the judgment to be affirmed. Thank you. May it please the Court. There was an extensive discussion on when Judge Bitter abuses its discretion or what this court would recognize would be an abuse of discretion. And if I'm hearing my friend correctly, he's essentially saying that because the oil spill didn't give Vincent Culliver prostate cancer, it was safe for Judge Bitter to assume that it didn't give Jerome Smith rhinitis. And I've never seen a connection made in any case saying that a judge can look to see what an expert has opined on or what data has revealed in an entirely different case, pending in a different court, and say because it didn't give Vincent Culliver prostate cancer, there's no way that's going to give you information that's going to help you determine whether it gave Jerome Smith rhinitis. And that's just too big of an analytical gap to suggest, which is usually the standard you measure experts on, but to say that a district court can prejudge the expert opinion that hasn't even been given yet because the expert hasn't had all the data to even provide the opinion is respectfully a bridge too far. My opposing counsel is correct. We haven't seen a case reversing and remanding on that basis, and I would like to presume that that's why you asked us to come here and argue today because, as I noted at the very beginning, this situation is unique. We haven't seen this before. If there was a case right on point, it would have been the first paragraph of my brief. What I think is essential here, though, is to recognize that what BP is saying, he's looking at all this information, some of which he already has, stuff we've already given them, looking at information about what caused his particular condition. Look at the last two pages of our reply brief. BP uses that information all the time to attack our general causation experts because it's a circle, like I said before. You look at the specific instances in order to found an opinion on general causation. So if we don't have the ability not only to say what we think our guy was exposed to, but also to rebut BP's allegations of what they say our guy was exposed to, then when we designate experts to say this is the dose threshold and this is the amount that he had, if we don't have all the information about what he was exposed to, we can't give a cogent opinion on either of them. And that is what this court has recognized in Byrd. And that's what this court recognized in McGill. And I apologize, I realize I called up the McCain case earlier, but as a fellow Irishman, I think I can get away with that. But at the end of the day, BP can't have it both ways. They can't say you don't need this data, but then say we're going to attack your opinions once they're finally designated with the very data that you're now saying we don't need. That just doesn't make sense. And I think an important thing to point out also is that what is different between this case and the Culliver case or all other 16 cases, that's not before this court. And if this court wants supplemental briefing comparing Culliver to this case, which incidentally, you know, the opinion that was attached to BP's letter brief was a report and recommendations from the magistrate judge there. That's not a final decision yet. It certainly hasn't even been appealed. And again, that is a decision on an expert challenge. So what that expert ultimately looked at and came to his conclusions or what he used to arrive at his conclusions has nothing to do with whether Mr. Smith filed an appropriate Rule 56D motion saying I need a little bit more time. And that is the heart of the matter here. It's not whether the expert was stricken in any of the other cases or in any of the other cases if the plaintiff just gave up and said, you know what, I don't have enough here. That's what discovery is for. But to say that we have 700,000 pages of information that's waiting for our expert to read it, we've had a four-month rocket docket to try and get everything done, but we're just going to jump and say, you know what, in other cases that didn't work, so it doesn't work in your case either. Respectfully, there's no authority that allows that. And that is an abuse of discretion with all due respect to Judge Vitter. Finally, Your Honor, I think that it's just important to recognize that both for this court's own docket and the docket of every district court throughout the country, having umbrella discovery agreements that are enforceable is essential to the wheels of justice turning smoothly. Think of the number of just appeals that you've seen from Deepwater Horizon cases. Imagine if every single one of them had their own docket control order and appeals were coming to you left and right because every single one tried to reallege the same facts about different breaches of this. Having everybody cooperate makes life easier for everyone. And an opinion saying that it was an abuse of discretion for, it was not an abuse of discretion for a district judge to just completely ignore the existence of an umbrella discovery plan or an unrefuted plan that the other side didn't even say doesn't exist, I don't think that that assists the wheels of justice in hearing these cases. All right, counsel. Thank you very much.  Thanks to you both for your arguments this morning.